**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| SPECIALTY HOSPITAL OF WASHINGTON, LLC | Case No. 14-10935 (BLS) |
| Alleged Debtor | Involuntary Chapter 11 |
| | Reference Docket Numbers:  22, 25 and 29 |

**JOINDER IN THE DISTRICT OF COLUMBIA'S MOTION**
**TO TRANSFER VENUE TO THE UNITED STATES BANKRUPTCY COURT FOR**
**THE DISTRICT OF COLUMBIA FILED BY**
**THE ALLEGED DEBTOR SPECIALTY HOSPITAL OF WASHINGTON, LLC**

To the Honorable Brendan L. Shannon, United States Bankruptcy Court Judge:

By this joinder (the "**Joinder**") to the *Motion of the District of Columbia to Change Venue of Bankruptcy Proceedings and Transfer This Case to the United States Bankruptcy Court for the District of Columbia* (the "**District's Transfer Motion**") [Docket No. 22], the alleged debtor Specialty Hospital of Washington, LLC ("**SHDC**") requests the immediate transfer of this involuntary chapter 11 case to the United States Bankruptcy Court for the District of Columbia (the "**DC Court**").  There is no legitimate dispute that the DC Court, rather than this Court, is the appropriate venue for this case and for the soon-to-be-filed chapter 11 cases of certain of SHDC's operating affiliates, all of which operate or support safety-net healthcare providers in the District of Columbia and all of which are intended to be sold promptly through a bankruptcy auction process.  Accordingly, this Court should transfer this case before considering any substantive relief with respect to SHDC, including the Petitioning Creditors' ill-founded motion to have a trustee appointed before an order for relief against SHDC is entered (the "**Trustee Motion**").  *See* Docket No. 11.

In support of the District's Transfer Motion and this Joinder, SHDC states as follows:

**Preliminary Statement**

1.        SHDC operates a long-term acute care facility (an "**LTACH**")[1] located

approximately seven-tenths of a mile northeast of the United States Capitol, and just over one

mile from the DC Court, at 700 Constitution Avenue, N.E., Washington D.C. (the "**Capitol Hill**

**Location**").  Its operations and books and records are located exclusively within the District of

Columbia.  The overwhelming majority of its patients (all of whom are severely underserved)

come from the District of Columbia metropolitan area.  Its employees live in or near the District

of Columbia.  And, its creditors are overwhelmingly located in or near the District of Columbia.

Indeed, all but one of the Petitioning Creditors are located in or near the District of Columbia.

2.        Because SHDC provides medical services and care, the District of Columbia has a

particularized interest in SHDC.  Its Department of Health regulates and oversees SHDC and

will necessarily be involved in the intended sale of SHDC's operations and those of its affiliates.

The District of Columbia itself also is the gatekeeper for SHDC's most substantial sources of

revenue.  As such, the District of Columbia asserts that it is SHDC's most substantial (in

amount) creditor.  Understandably, therefore, the District of Columbia has requested that this

case be transferred to the DC Court.  *See* District's Transfer Motion [Docket No. 22].[2]

3.        The DC Court has particularized knowledge of SHDC.  SHDC's operations were

the subject of a prior chapter 11 reorganization plan in the case of *In re Capitol Hill Community*

---

[1]    LTACHs are specialized hospitals that treat patients with multiple conditions, but who may improve and be able
       to return home.  They treat people requiring comprehensive rehabilitation, head trauma treatment, respiratory
       therapy and pain management.  LTACH patients are often resident at a facility for more than 25 days, and often
       are transferred from intensive or critical care units.  These patients receive care coordination, dialysis, wound
       care, pharmacy and physician services, radiation, and physical therapy, among other services.

[2]    The description of SHDC in the District's Transfer Motion sometimes describes the combined operations of
       SHDC and its affiliates in the District of Columbia.  Given the plan described below to sell the assets of these
       related entities through a chapter 11 case in the DC Court, this combined description is particularly appropriate in
       considering the current requests to transfer venue to the DC Court.

*Hospital d/b/a MEDLINK Hospital at Capitol Hill*, case number 02-00358, confirmed by the DC Court.[3]  In addition, the DC Court is intimately familiar with the challenges facing safety-net healthcare providers in the District of Columbia as well as its regulatory and healthcare financing systems.  For example, the DC Court has presided over not only the chapter 11 case of Capitol Hill Community Hospital, but also over the chapter 11 cases of Greater Southeast Community Hospital which was forced to seek chapter 11 protection twice within three years (case numbers 99-01159 and 02-02250).  A current affiliate of SHDC, the successor to Hadley Memorial Hospital, was an affiliated chapter 11 debtor in the second Greater Southeast chapter 11 case.

4.      These facts, coupled with SHDC's own preference for its chapter 11 case and the chapter 11 cases of certain of its affiliates to proceed before the DC Court, compel the transfer of this case to the DC Court both in the interest of justice and for the convenience of the parties. The Petitioning Creditors' decision to commence this case in Delaware rather than their own local DC Court is entitled to no deference, although their motivation for having done so, and having put not only SHDC but also the District of Columbia to the task of having to seek the transfer of venue, may become clear over time.

### Jurisdiction

5.      This Court has jurisdiction over the District's Transfer Motion and this Joinder under 28 U.S.C. §§ 157 and 1334.

### Applicable Statute and Rule/Notice

6.      The statutory predicate for the relief sought in the District's Transfer Motion and this Joinder is 28 U.S.C. § 1412 ("A district court may transfer a case or proceeding under title

---

[3]   The principal of one of the Petitioning Creditors, Capitol Hill Group, was not only the principal of Capitol Hill Community Hospital during its chapter 11 case before the DC Court, but also a debtor himself before the DC Court.

602277615v7

11 to a district court for another district, in the interest of justice or for the convenience of the parties."). Federal Rule of Bankruptcy Procedure 1014(a)(1), which is applicable here,[4] also provides that the Court "may transfer the case to any other district if the court determines that the transfer is in the interest of justice or for the convenience of the parties," after a "hearing on notice to the petitioner, the United States trustee, and other entities as directed by the court." SHDC has provided notice of this Joinder to the petitioners, the United States Trustee, to the District of Columbia and to all other parties who have requested notice on the docket of this case. SHDC believes that no further notice of this Joinder is necessary or required.

### The Petitioners and the Commencement of the Involuntary Case

7.      On April 28, 2014 (the "**Petition Date**"), six alleged creditors joined together and commenced this involuntary chapter 11 case against SHDC.  Since that time, one of the petitioning creditors has withdrawn.  Of the five remaining petitioning creditors, four are located in the District of Columbia or nearby communities in Virginia and Maryland.  The last petitioning creditor is located in Plano, Texas, which is no closer or more conveniently located to Wilmington, Delaware, than to the District of Columbia.

8.      Also on the Petition Date, the petitioners took the highly unusual step of filing the Trustee Motion.  Objections to the Trustee Motion are due on May 8, 2014, and a hearing on the Trustee Motion has been scheduled for May 12, 2014.  SHDC will object to the Trustee Motion. As will be demonstrated in that objection, the DC Court and not this Court should decide the issues raised by that motion after venue is transferred.  Moreover, the Trustee Motion lacks merit in any event.  For example, contrary to the petitioners' contentions, SHDC (and its affiliates) recently received regulatory sign-off on the quality of care being provided to patients.  In

---

[4]   SHDC is a Delaware limited liability company, and thus venue technically is proper in the District of Delaware. 28 U.S.C. § 1408.

addition, the petitioners' accusation relating to the alleged misuse of one of the petitioning

creditor's taxpayer identification number is ill-founded.  Although an affiliate of SHDC did

mistakenly send out a few form 1099s with the wrong taxpayer identification number at one

point in time, the mistake was self-discovered and promptly corrected.

### SHDC and Its Affiliates

9.      As noted above, SHDC owns and operates an LTACH at the Capitol Hill

Location.  The Capitol Hill Location is in a neighborhood of the District of Columbia with

limited availability to healthcare resources and a high Medicare and Medicaid population.  An

affiliate of SHDC also owns and operates a skilled nursing facility (a "**SNF**")[5] at the Capitol Hill

Location, serving the same impoverished community.[6]

10.      Other affiliates of SHDC, referred to collectively as "**Hadley,**" also own and

operate an LTACH and SNF in a different underserved neighborhood located in the northeast

section of the District of Columbia.  Hadley's patients and residents are highly dependent on

Medicare and Medicaid.  In addition, Hadley operates an out-patient surgery center primarily for

its LTACH patients and SNF residents. [7]

11.      Between SHDC and Hadley, they operate the only facilities in the District of

Columbia that provide acute care to a patient for more than twenty-eight days.  As such, they

provide a critical service to the citizens of the District of Columbia, in particular those who rely

on Medicare and Medicaid to pay for healthcare services. Moreover, these services are

---

[5]  A SNF is commonly referred to as a nursing home.  It provides twenty-four hour care to residents who are sick, disabled or injured.

[6]  The entity that owns and operates the SNC at the Capitol Hill Location is Specialty Hospitals of Washington – Nursing Center, LLC ("**SHDC Nursing Center**").

[7]  Specialty Hospital of Washington – Hadley, LLC owns and operates the LTACH, and SHA Hadley SNF, LLC owns and operates the SNF at Hadley.

irreplaceable given a moratorium on the ability to license new LTACHs.  It is therefore

imperative that these LTACHs continue to operate.  *See* District's Transfer Motion at ¶ 11.

12.      Admittedly, the number of patients at both the SHDC and Hadley LTACHs are

less than the number each is licensed to handle.  As of May 5, 2014, there were 20 LTACH

patients at SHDC, in a facility licensed for 60; and there were 32 LTACH patients at Hadley, in a

facility licensed for 82.  Regardless of the number, the patients at these facilities require constant,

life-preserving care.  Of the 20 LTACH patients at SHDC, 15 have tracheostomies or are

supported by a ventilator.  Similarly, of the 32  LTACH patients at Hadley, 15 have

tracheostomies or are supported by a ventilator.

13.      In contrast to the LTACH facilities, the SNF facilities at both the Capitol Hill

Location and Hadley are near capacity.  SHDC Nursing Center is licensed for 117 residents at

the Capitol Hill Location and, as of May 5, 2014, it had 113 residents.  Hadley is licensed for 62

residents and, as of May 5, 2014, it had 58 residents.  Like the LTACHs, these SNFs also have

patients with tracheostomies (18 at SHDC Nursing Center and 6 at Hadley) or who are supported

by a ventilator (8 at SHDC Nursing Center and 7 at Hadley).

14.      Records relating to patients at SHDC and Hadley are maintained at those facilities

in the District of Columbia.  Similarly, the business records and business offices of these entities

are maintained in the District of Columbia.  No records are maintained in Delaware.

15.      Also, as previously noted, SHDC understands that its doctors and other caregivers

all live in the District of Columbia or its suburbs. And while SHDC may acquire some goods

from national suppliers, generally the vast majority, if not all, of SHDC's trade creditors are

located in or near the District of Columbia, maintain a sales or service force in or near the

District of Columbia, or came to the District of Columbia to sell product or otherwise to extend

credit to SHDC (or Hadley).

**SHDC Will Consent to Relief After the Case Is Transferred And Vigorously Pursue A Sale**

16.     SHDC and its affiliates are safety-net healthcare providers in financial distress.

The cause for this distress is systemic and historical, reflecting a number of factors including

patient mix, reimbursement rates, the timing and amount of actual reimbursements and a

particularly challenging healthcare environment in the District of Columbia.  Indeed, as

described above, predecessors to both SHDC and Hadley have been chapter 11 debtors.

17.     Recognizing these issues, SHDC and its affiliates have engaged nationally

recognized healthcare turnaround advisors at Alvarez & Marsal to consult on their businesses

and have been working with these professionals for approximately eight months.  They also have

engaged nationally recognized healthcare investment bankers at Cain Brothers, with whom they

have been working for approximately four months.

18.     With the assistance of these advisors, SHDC and its affiliates have concluded that

they must be sold.  They also have concluded that the most efficient way to effectuate a sale is

through the chapter 11 process, and indeed, parties that have expressed interest in these

businesses have insisted on acquiring them through a bankruptcy process.

19.     SHDC and its affiliates are substantially far along in the process of coordinating a

bankruptcy sale.  Currently, they are negotiating the terms of what will become a "stalking

horse" bid for their operating assets, and the stalking horse bidder is prepared to finance SHDC

and its affiliates during their chapter 11 cases to facilitate a prompt bankruptcy sale process, after

this case is transferred to the DC Court, the affiliates commence their own chapter 11 cases in the

DC Court, and the DC Court approves the financing.

602277615v7

20.     Under these circumstances, SHDC is prepared to consent to the entry of an order for relief under chapter 11, after the case is transferred to the DC Court.[8]

**Transfer is Required in the Interest of Justice and For the Convenience of the Parties**

21.     Courts in Delaware consider both public and private interests in determining whether to transfer a case under 28 U.S.C. § 1412 "in the interest of justice or for the convenience of the parties."

22.     The relevant public interests include:

    a.  "the enforceability of [any] judgment";

    b.  "practical considerations that would could make trial easy, expeditious, or inexpensive";

    c.  "the local interest in deciding local interests at home";

    d.  "the public policies of the fora"; and

    e.  "the familiarity of the trial judge with the applicable state law . . . ."

*Jumara v. State Farm Insurance Company*, 55 F.3d 873, 879 (3d Cir. 1995); *see also In re Hayes Lemmerz Int'l Inc.*, 312 B.R. 44, 46 (Bankr. D. Del. 2004) (citing *Jumara* and listing factors).

23.     The relevant private interests include:

    a.  "the plaintiff's forum preference";

    b.  "the defendant's forum preference";

    c.  "whether the claim arose elsewhere";

    d.  "the convenience of the parties as indicated by their relative physical and financial condition";

---

[8]   In the absence of a transfer of these cases to the DC Court, SHDC reserves all of its rights to challenge the involuntary petition filed against it.

e.   "the convenience of the witnesses – but only to the extent that witnesses may actually be unavailable for trial in one of the fora"; and

f.   "the location of books and records . . . ."

*Jumara,* 55 F.3d at 879 (3d Cir. 1995); *see also Hayes Lemmerz* 312 B.R. at 46.

24.     Both the public and private interests at play in this case compel its transfer to the DC Court.

### The Public Interest Compels Transfer

25.     It is beyond dispute that public interest considerations all weigh in favor of the transfer of this case to the DC Court.

26.     Simply put, the public interest of the District of Columbia in respect of the provision of safety net and other healthcare to its citizens substantially outweighs any public interest that this Court may have in SHDC, particularly where, as noted, SHDC and its affiliates have no operations within Delaware and its contractual relations are exclusively outside of Delaware.

27.     In addition, the DC Court likely is more familiar than this Court with the local laws affecting the operation of SHDC, its affiliates and their chapter 11 cases.  Based on its experience in prior cases (including a case involving SHDC's facility), the DC Court already has been called upon to deal with local healthcare legal issues, including Medicaid reimbursement and licensure requirements.  This familiarity also extends to other issues that may arise in SHDC's chapter 11 case that may be impacted by local law, including assumption and assignment issues and resolving lease rejection and other contractually based claims.

602277615v7

28.     Also, any judgment or order entered in a chapter 11 case for SHDC will, from a practical perspective, need to be enforced in the District of Columbia, where SHDC exclusively operates.

29.     Moreover, given that SHDC is located in the District of Columbia, nearly all creditors are located in or near the District of Columbia, and in particular the primary regulator of SHDC is the District of Columbia, it is apparent that any dispute requiring judicial resolution can be more efficiently and expeditiously resolved by the DC Court.  Without limiting the forgoing, if, for example, SHDC is required to compel the attendance of an individual at trial or a hearing by way of subpoena, there is little doubt that the DC Court will have the jurisdictional power to do so.  Under Federal Rule of Evidence 45, made applicable to bankruptcy cases by Federal Rule of Bankruptcy Procedure 9016, the DC Court can compel attendance for individuals who live or work within 100 miles of that Courthouse, and SHDC's regulators and nearly all of its creditors are all located in or near the District of Columbia.  In contrast, although the DC Court and this Court are only 98 or 99 miles apart, as the crow flies, it cannot be suggested with equal confidence that this Court's jurisdictional subpoena power will extend to the same large group of people who may be required to be compelled to testify in SHDC's case.

30.     Finally, there is a clear local interest in having the future fate of the District of Columbia's only two LTACH facilities, which necessarily impacts the public policies of the District of Columbia and not Delaware, decided by a court in the District of Columbia.

***The Private Interest Also Compels Transfer***

31.     Although the public interest considerations arguably are sufficient on their own to compel transfer of this case to the DC Court, the private interest considerations also require transfer.

32.     Initially, other than the petitioners, whose motivation for choosing Delaware over their own local bankruptcy court is unclear, there is a clear preference for this case to proceed before the DC Court.  Not only is that SHDC's preference, it also is the preference of the District of Columbia.  Moreover, although the case law in the Third Circuit indicates that a court should consider the preferences of both a "plaintiff" and "defendant" when deciding a request to transfer venue, there is no indication that the preference of petitioning creditors in an involuntary bankruptcy case should be entitled to any deference.  To the contrary, in venue disputes the debtor's choice of forum is "entitled to great weight."  *In re Ocean Props. of Del., Inc.*, 95 B.R. 304, 305 (Bankr. D. Del. 1988); *see also* Transcript of Hearing at 92, *In re Carey Limousine, L.A., Inc.*, Case No. 12-12664 (BLS) (Bankr. D. Del. Dec. 5, 2012) (noting that a debtor's choice of a proper venue is "afforded substantial deference").[9]

33.     Furthermore, no claims by or against SHDC arose in Delaware.  Given that SHDC is located in the District of Columbia, creditors are also located in or near the District of Columbia, and even those who are not headquartered in or near the District of Columbia explicitly and implicitly decided to extend credit to SHDC within the District of Columbia, all claims by or against SHDC effectively arose in the District of Columbia.

34.     Moreover, it will be more convenient for the parties and any required witnesses to proceed with a case in the District of Columbia.  The physical proximity of the DC Court and of

---

[9] A copy of the relevant portion of this hearing transcript is attached as <u>Exhibit A</u>.

its counsel to the DC Court should lessen the burden on SHDC's finances from its chapter 11 efforts. Its personnel necessary to run its operations as well as participate in its chapter 11 are predominantly located in the District of Columbia and can more easily get to the DC Court and continue to run the LTACH. And, because the majority of SHDC's creditors, including all but one of the petitioners, are located in or near the District of Columbia, it will be more convenient for them as well for this case to be before the DC Court.

35.     Finally, SHDC's books and records are located within the District of Columbia. None are located in Delaware.

### Conclusion

36.     On these facts, the Court should transfer the SHDC case to the DC Court immediately, so that the DC Court can make all substantive decisions relating to this case.

37.     The interest of justice requires this result. The public interest considerations applicable to a venue change request clearly highlight the compelling interest of the District of Columbia in having the SHDC case in the District of Columbia and the efficiency and efficacy of having the DC Court, which is familiar not only with the legal issues driven by the local law of the District of Columbia, but with the facilities of SHDC and its affiliates, preside over this case.

38.     Similarly, the convenience of the parties requires this result. The private interest considerations applicable to a venue-change request demonstrate that other than being a Delaware limited liability company, SHDC has no connection to this forum. It has no operations in Delaware and its healthcare operations are not regulated by Delaware. Its books and records are not in Delaware. Its creditors are not located in Delaware. To the contrary, the majority of SHDC's creditors appear to be located more conveniently to the District of Columbia than to this forum

39.     In short, it would be more expensive and less efficient for everyone for this case to proceed in this Court.  *In re Ocean Props.*, 95 B.R. at 306 (transferring venue where it would be "more economical" to proceed in another forum, where the other forum's law was the "greater portion of applicable non-bankruptcy law," "disputed claims will undoubtedly result in litigation," collateral was located in the other forum, the majority of witnesses would be in the other forum, "[t]here would be the costs of bringing witnesses to Delaware and difficulties with the service of process," "[m]oving these cases through Delaware court would result in not only a waste of judicial time in becoming acquainted with [the other forum's] law but also a waste of Debtors' resources," and there would be the expenses of paying two or more sets of counsel.")


[Remainder of Page Intentionally Blank]

**WHEREFORE,** SHDC requests that the Court immediately transfer this case to the

United States Bankruptcy Court for the District of Columbia and grant it such other relief as is

just and proper.

Dated: May 7, 2014                    Respectfully submitted,
       Wilmington, Delaware

FERRY, JOSEPH & PEARCE, P.A.

/s/Rick S. Miller
Rick S. Miller [DE 3418]
824 Market Street, Ste. 1000
Wilmington, Delaware 19801
Telephone: (302) 575-1555
Facsimile: (302) 575-1714
rmiller@ferryjoseph.com

-and-
PILLSBURY WINTHROP SHAW PITTMAN LLP
Andrew M. Troop (*pro hac vice* application pending)
1540 Broadway
New York, NY 10036-4039
Telephone: (212) 858-1000
Facsimile: (212) 858-1500
andrew.troop@pillsburylaw.com

and

Jerry Hall (*pro hac vice* application pending)
2300 N Street, N.W.
Washington, D.C. 20037-1122
Telephone:  (202) 663-8000
Facsimile:  (202) 663-8007
Jerry.hall@pillsburylaw.com

*Counsel for Specialty Hospital of Washington, LLC*
*Alleged Debtor*

14